STATE v. JOHN BERNDGEN.

December 20, 1898.

Nos. 11,335—(16).

**Larceny—Verdict Sustained by Evidence.**
> Evidence considered, and *held* sufficient to sustain the finding of the jury that the defendant was guilty of the crime of larceny.

Defendant was convicted in the district court for Hennepin county of grand larceny in the second degree, and sentenced, Mc-Gee, J., to imprisonment in the State Reformatory at St. Cloud. From the judgment, defendant appealed. Affirmed.

*Frank M. Nye*, for appellant.

*H. W. Childs*, Attorney General, *Jas. A. Peterson*, County Attorney, and *C. W. Somerby*, Assistant County Attorney, for respondent.

START, C. J.

The defendant was convicted in the district court of the county of Hennepin of the crime of grand larceny in the second degree. He made a motion for a new trial, which was denied, and he was, by the judgment of the court, sentenced to imprisonment in the state reformatory. He appealed from the judgment.

The principal question presented by the record for our consideration is whether the evidence is sufficient to sustain the verdict of guilty. The defendant and Orle Wales were charged with having stolen from a warehouse, located some 23 miles from the city of Minneapolis, at a station on the railway known as "Rogers," 18 bushels of rye, on the night of April 11, 1898.

The evidence to establish the fact that the larceny was committed by one or more persons is clearly sufficient, but as to the defendant's connection with the larceny it is less satisfactory.

The testimony on the part of the state tended to show that on the evening of the larceny a farmer who lived three-fourths of a mile from the station where the warehouse was located saw two men who were riding in a farm wagon, with a wood-colored box, to which were attached a pair of horses. They stopped, and inquired of him how far it was to Dayton. They also made some inquiries as to Rogers, and drove on towards Dayton in the opposite direction from Rogers. There was no identification of the defendant or of Wales as one of these men. In the forenoon of the next day the defendant and Wales were arrested while driving over Plymouth avenue bridge, in the city of Minneapolis, in a farm wagon, with a faded wood box, drawn by a pair of horses. In the wagon there were 10 sacks of rye, estimated at about 2 bushels to a sack. The officers making the arrest inquired of them where they got the rye, and they would not answer. The defendant was driving the team when they were arrested. He afterwards made a statement to one of the officers to the effect that Wales was to blame for getting him into trouble.

There was evidence on the part of the defendant tending to show that he was in Minneapolis during the afternoon and evening of the day the larceny was committed.

The defendant was a witness in his own behalf, and denied that he had anything to do with the larceny, or knew anything about it. He testified that Wales was driving along the street with the wagon, and invited him to ride with him; that he accepted his invitation, and that shortly before the arrest Wales asked him to drive while he rolled a cigarette; that he did not tell the officer that Wales was to blame for getting him into the trouble, but that

he did tell him that he had never been arrested for anything of the kind before. He admitted that he had been previously arrested, but did not state what for. There was no evidence as to where the rye found in the possession of the defendant and Wales came from.

Whether the jury were justified in convicting the defendant on this evidence depends largely upon the question whether they were satisfied with his explanation as to how he and Wales came to be in possession of the same kind of grain, and substantially the same quantity, as was stolen the evening before, and why he did not explain where he got it, or his connection with it, when the officers made the inquiry as to this matter.

The evidence on the part of the state made a case which fairly required the defendant to make the explanation. It was for the jury, who had an opportunity to observe the manner of the defendant when giving his testimony, and to determine his credibility, to say whether, in view of his explanation, the evidence was sufficient to satisfy them beyond a reasonable doubt of his guilt. Their finding was against the defendant, which was approved by the trial court, and we cannot disturb it.

In disposing of the defendant's motion to dismiss, the trial court referred to the evidence, and particularly as to the similarity of the wagon in possession of the two men on the evening of the larceny, near Rogers, with the one in possession of the defendant and Wales the next forenoon, to which the defendant excepted, whereupon the court said there is proof that they were in a wagon, on the bridge, which had an unpainted box, and further:

"That is all the court means to state. I don't undertake to say that it was the same wagon, but I do say that it is a question for the jury."

This is assigned as error. We are of the opinion that it was not. Judgment affirmed.